**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

**ROBERT L. DRUMMOND,**

Plaintiff**,**

**v.**

**HARTFORD FIRE INSURANCE COMPANY, JAMES WALZ, JEFFREY PANITZKE, JOHN DOES 1-100,** and **ABC INC. 1-100,**

Defendants.

**Civil Action No.**

**COMPLAINT AND JURY DEMAND**

Plaintiff Robert L. Drummond ("Plaintiff") brings this action by and through his attorneys, The Sorokin Law Firm and The JTB Law Group LLC, and for his Complaint, alleges of his own knowledge and conduct and upon information and belief as to all other matters, as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action pursuant to 29 U.S.C. § 216 (b) and other applicable provisions of the Fair Labor Standards Act ("FLSA") to recover such legal or equitable relief as may be appropriate to effectuate the purposes of 29 USCS § 215(a)(3), including without limitation injunctive relief, continued employment, reinstatement of employment, restoration of satisfactory performance reviews as appropriate, promotion, and actual and punitive damages.

2. Plaintiff brings this action against Defendants under the FLSA in connection with Defendants' retaliation against Plaintiff in the terms and conditions of his employment for protected activity under the FLSA, including without limitation for his having filed a complaint on December 8, 2014 in a related matter against Defendant Hartford Fire Insurance Company and other affiliated companies in this

Court, captioned *Drummond v. Hartford Financial Services Group et al.*, No. 3:14-cv-01837-AWT (the "First Drummond Case"), for unpaid overtime.

3. Plaintiff has exposed Hartford, a repeat FLSA offender, for its systemic and blatant violations of the wage and hour laws and subsequent to that expose, Mr. Drummond, a 14-year employee who never received a review below satisfactory, is now receiving negative reviews and suffering through an abusive pattern of reprisal from the Defendants.

4. Defendants have committed a textbook violation of retaliation in an effort to fire Drummond and chill additional people from coming forward to provide truthful testimony.

**JURISDICTION AND VENUE**

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves the FLSA, 29 U.S.C. § 201 *et seq.*, a federal statute.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391 (c) and (d) because the Defendants are subject to personal jurisdiction in this District.

**THE PARTIES**

7. At all relevant times herein, Plaintiff Robert L. Drummond was and is currently a resident of the State of Wisconsin and employed by the Defendant as an Automobile Service Representative (ASR).

8. At all relevant times herein, Defendant Hartford Fire Insurance Company (the "Company," the "Hartford"), upon information and belief is a corporation organized and existing under the laws of the State of Connecticut, with its principal place of business in Hartford, Connecticut.

9. Upon information and belief, the Hartford has annual revenues of more than $500,000 per year in interstate commerce and maintains business operations throughout the United States.

10. Upon information and belief, Defendant Jeffrey Panitzke ("Panitzke") at all relevant times herein was and currently is a management employee of the Hartford and exercises supervisory or management authority over the Plaintiff and is Plaintiff's immediate supervisor.

11. Upon information and belief, Defendant James Walz ("Walz") at all relevant times herein was and currently is an Assistant Vice-President of the Hartford, and exercises supervisory or management authority over Defendant Panitzke and over ASRs at the Hartford, including the Plaintiff.

12. Upon information and belief, Hartford was "employer" of the Plaintiff and the Defendants were collectively the joint employer of the Plaintiff and of all the ASRs of the Hartford within the meaning of 29 U.S.C. § 203 (d).

13. JOHN DOES 1-100 is a fictitious designation for individuals affiliated with or employed by Hartford, whose identities are currently unknown, who committed, aided, abetted, and/or ratified the acts of the Defendants set forth herein, who proximately caused the harm to Plaintiff as set forth herein.

14. ABC 1-100 is a fictitious designation for entities affiliated with or owned by Hartford, whether corporations or partnerships, the identities of which are currently unknown, which committed, aided, abetted, and/or ratified the acts of the Defendants set forth herein and proximately caused the harm to Plaintiff as set forth herein.

15. While Plaintiff is unaware of the names and capacities of the parties sued herein as John Does 1-100 and ABC 1-100, Plaintiff prays for leave to amend his Complaint and serve such fictitiously named parties once their names and capacities are known.

16. Plaintiff is informed and believes, and therefore alleges, that those parties named as John Does 1-100 and ABC 1-100 are officers, shareholders, managers, and/or employees of Hartford.

17. Plaintiff is informed and believes, and therefore alleges, that the acts and omissions of each of the Defendants and the parties named as John Does 1-100 and ABC 1-100 as set forth herein were

committed, aided, abetted, and/or ratified by each of the Defendants individually and all of the Defendants collectively, and are in accordance with and represent the official policy of The Hartford.

## FACTUAL ALLEGATIONS

18. Plaintiffs repeat and re-allege all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

### A. Mr. Drummond – A Successful ASR From 2001 To 2013.

19. Prior to the filing of the First Drummond Case on December 8, 2014, Mr. Drummond was well-regarded at The Hartford for his job performance.

20. Prior to December 8, 2014, Mr. Drummond was officially rated through the Hartford evaluation process as a successful ASR.

21. Prior to December 8, 2014, Mr. Drummond was officially rated at times as an exceptional ASR.

22. Never, prior to December 8, 2014, did The Hartford ever give Mr. Drummond a performance rating lower than a "3," "successful."

23. The Hartford's job performance rating system is linked to its system for incentivizing ASRs through bonuses and raises.

24. Those ASRs who receive a "3" or above for the year are eligible for an annual bonus and a raise.

25. Those ASRs who receive lower than a "3" for the year are not eligible for an annual bonus or a raise.

26. Prior to December 8, 2014, Mr. Drummond was rated a "5," "Exceptional."

27. For 2013, Mr. Drummond's performance was rated a "3," "Successful."

28. Mr. Drummond received annual bonuses and raises each year from 2001 to 2013.

**B. In 2014, The Hartford DID Not Authorize Overtime Pay Mr. Drummond Needed To Do His Job, While Increasing His Workload And Berating Him For Failing To Complete It.**

29. ASRs are classified as non-exempt employees under the FLSA.

30. As non-exempt employees ASRs are entitled to overtime if they work in excess of 40 hours in a workweek.

31. The Hartford had a policy and practice of terminating the employment of ASRs who did not complete their workload in a timely manner.

32. Mr. Drummond and other ASRs routinely worked more than 40 hours per week and received no overtime compensation for hours worked in excess of 40 per week.

33. The Hartford has a policy and practice of selectively terminating the employment of ASRs who work off the clock, even though the job mandates off the clock work.

34. The Hartford also has a policy and practice of terminating the employment of ASRs who do not complete their weekly workload.

**C. In 2014, Mr. Panitzke Is At First Satisfied With Mr. Drummond.**

35. In 2014, Defendant Walz began requiring the team leaders of the ASRs to hold one-on-one meetings with each of their ASRs on a monthly basis to discuss performance and other issues related to the job.

36. Pursuant to this requirement, from January 2014 through September 2014, Defendant Panitzke held one-on-one monthly meetings with Mr. Drummond to discuss performance.

37. Each of Mr. Panitzke's one-on-one monthly meetings with Mr. Drummond from January 2014 through September 2014 reflected Mr. Panitzke's general satisfaction with Mr. Drummond's performance.

38. Mr. Panitzke did not criticize Mr. Drummond for doing a low volume of work during any of the one-on-one meetings held between January 2014 and September 2014.

39. Mr. Panitzke did not criticize Mr. Drummond for having a poor attitude during any of the one-on-one meetings held between January 2014 and September 2014.

40. Mr. Panitzke did not speak poorly about or criticize Mr. Drummond's job performance to other ASRs at any time from January 2014 through September 2014.

### D. Mr. Drummond Expressed Frustration With FLSA Violations, Complained About The "Mitchell System," And Complained About Having To Work For Free.

41. However, in the one-on-one monthly meetings with Mr. Panitzke from January 2014 through September 2014, Mr. Drummond began to express frustration with the requirement to work off-the-clock as a condition of keeping his position and/or maintaining good performance ratings and satisfying performance metrics set by management.

42. Mr. Drummond questioned the benchmarks and production goals of the organization and asked Mr. Panitzke and other Hartford managers how these metrics were developed.

43. Mr. Drummond complained by e-mails and in meetings to Mr. Panitzke and other Hartford managers about being required to work uncompensated overtime hours.

44. Mr. Panitzke and other Hartford managers did not like Mr. Drummond's e-mails and comments.

45. Defendant Walz stated that the business and computer models they were using to do their jobs were broken.

46. Defendant Walz stated that ASRs had to work with business and computer models they had been given, even though they were broken.

47. Defendants Walz and Panitzke initiated and ratified the FLSA violations.

48. Mr. Panitzke let Mr. Drummond know that little, if any, overtime pay would be approved.

49. Mr. Panitzke let Mr. Drummond know that he had to complete his workload each week, even though little or no overtime would be approved.

50. Mr. Panitzke let Mr. Drummond know that he and senior management were displeased by his e-mails and comments relating to exposing the unlawful practices.

51. Drummond was harassed, intimidated, and bullied by management regarding its requirement to work off-the-clock as a condition of keeping his job.

**E. Mr. Drummond Made Internal Complaints Regarding FLSA Violations.**

52. On September 4, 2014, Mr. Drummond complained via e-mail to Martha Gervasi, Head of Human Resources Administration and Programs, regarding being harassed, intimidated, and bullied about the real Hartford policy regarding overtime requirements that were forcing ASRs to work off the clock.

53. The Human Resources Department told Mr. Drummond that it would investigate his claims.

54. Mr. Drummond's internal complaints to Mr. Panitzke and Ms. Gervasi constitute "complaints" under the FLSA, 29 U.S.C. § 215 (a)(3).

55. Mr. Drummond's internal complaints to Mr. Panitzke and Ms. Gervasi constitute protected activity under the FLSA.

56. Mr. Panitzke and Ms. Gervasi knew about Mr. Drummond's internal complaints to them.

57. Mr. Panitzke and Ms. Gervasi knew or should have known that Mr. Drummond's internal complaints were protected by the FLSA.

58. In his interim evaluation held in October 2014, Mr. Drummond was rated a "3, "successful."

59. However, in November 2014, after Mr. Drummond exposed and complained about Hartford's unlawful pay practices in his next one-on-one meeting with Mr. Panitzke, Mr. Drummond received criticism regarding what was called a "bad attitude" and decreased work volumes.

60. The only "bad attitude" Mr. Panitzke could point to is with Mr. Drummond complaining about the unlawful pay practices.

61. In December 2014, in Mr. Drummond's next one-on-one meeting with Mr. Panitzke, Mr. Drummond received intensified criticism from Mr. Panitzke regarding his alleged poor attitude and alleged failure to meet performance benchmarks.

### F. Mr. Drummond Filed The Federal Lawsuit In The First Drummond Case.

62. On December 8, 2014, Mr. Drummond filed the Complaint in the First Drummond Case, *Drummond v. Hartford Financial Services Group et al.*, No. 3:14-cv-01837-AWT in this Court.

63. The First Drummond Case constitutes a "complaint" protected by 29 U.S.C. § 215(a)(3).

64. Mr. Drummond's filing of the First Drummond Case is an activity protected under the FLSA.

65. The First Drummond Case complaint was served on The Hartford on or about January 22, 2015.

66. Defendants knew that Mr. Drummond filed the First Drummond Case.

67. Defendants knew or should have known that Mr. Drummond's filing of the First Drummond Case constitutes protected activity under the FLSA.

### G. The Hartford Intensifies its Retaliation Against Mr. Drummond For His Protected Activity and Right of Commencing a Federal Lawsuit.

68. In January 2015, in Mr. Drummond's one-on-one meeting with Mr. Panitzke, Mr. Drummond received continued criticism regarding his alleged poor attitude and alleged failure to meet performance benchmarks.

69. Other types of retaliation followed the filing of the First Drummond Case.

#### i. *Mr. Panitzke Isolates Mr. Drummond And Treats Him Differently From Other Team Members.*

70. Starting in early 2015, Mr. Drummond, alone among the members of his team, was excluded from his team's meeting aimed at training a new ASR.

71. Prior to December 8, 2014, Mr. Drummond had always been included in meetings regarding trainings of new ASRs.

72. Since December 8, 2014, Mr. Panitzke has spoken critically about Mr. Drummond's job performance to other ASRs.

73. Before December 8, 2014, Mr. Panitzke had not spoken critically about Mr. Drummond's job performance to other ASRs.

74. Since December 8, 2014, Mr. Panitzke has required Mr. Drummond to request Mr. Panitzke's permission or approval in order to work beyond the core business hours of 8 AM to 5 PM.

75. Mr. Panitzke does not require any other member of Mr. Drummond's team to request permission or approval in order to work beyond the core business hours of 8 AM to 5 PM.

76. In early 2015, Mr. Drummond's entire team was required to be in Indianapolis for a team meeting.

77. The day before the meeting, there was an advisory for a bad snow and ice storm in the Milwaukee and Chicago areas.

78. Mr. Drummond had to drive through the area affected by the storm in order to get from his home in New Berlin, Wisconsin to Indianapolis for the team meeting.

79. Mr. Panitzke advised members of the team by e-mail, ***excluding Mr. Drummond***, to take overtime to leave for Indianapolis the night before the storm in order to avoid the snow and ice on their way to the team meeting.

80. Mr. Panitzke did not tell Mr. Drummond to take overtime to leave early for Indianapolis in order to avoid the snow and ice on his way to the Indianapolis team meeting.

81. Mr. Panitzke did not give Mr. Drummond any advice, warning, or directive that would have enabled him to avoid the snow and ice on his way to the Indianapolis team meeting.

**ii. *Mr. Panitzke Treats Mr. Drummond's Overtime Requests Differently From Those Of Other Team Members.***

82. Since December 8, 2014, Mr. Panitzke has denied Mr. Drummond overtime that Mr. Drummond has requested in order to complete his work.

83. Since December 8, 2014, Mr. Panitzke has granted requests for overtime made by ASRs on the team other than Mr. Drummond.

**iii. *Mr. Panitzke Generally Mistreats Mr. Drummond.***

84. Prior to December 8, 2014, Mr. Panitzke never accused Mr. Drummond of entering incorrect times on his time card.

85. Since December 8, 2014, Mr. Panitzke has accused Mr. Drummond of entering incorrect times on his time card.

86. Since December 8, 2014, Mr. Panitzke criticized Mr. Drummond for entering time that was allegedly off by four to six minutes.

87. Mr. Drummond uses those four-minute to six-minute periods to fill out his time card.

88. Prior to December 8, 2014, Mr. Panitzke approved all of Mr. Drummond's expense accounts for reimbursement in a period of two to three days.

89. After December 8, 2014, Panitke has taken as long as eighteen days to approve Mr. Drummond's expense accounts.

***iv. Mr. Panitzke Harasses Mr. Drummond About A Computer Problem That Exists Only In Mr. Panitzke 's Head, In Order To Continue To Harass Mr. Drummond.***

90. In an incident that took place after December 8, 2014, Mr. Panitzke accused Mr. Drummond of not having his Microsoft Lync program turned on.

91. In response to Panitzke's accusations, Mr. Drummond advised Panitzke that his Microsoft Lync program was turned on and working.

92. Mr. Panitzke sent Mr. Drummond eleven pages of e-mails that day advising Mr. Drummond that his Microsoft Lync program was not turned on.

93. Mr. Panitzke continually badgered Mr. Drummond that day about the Microsoft Lync program not being on.

94. Mr. Drummond called The Hartford's computer Help Desk regarding Mr. Panitzke's complaints.

95. Mr. Drummond told the Help Desk that Mr. Panitzke was insisting that Mr. Drummond had the Microsoft Lync program turned off.

96. The Hartford Help Desk told Mr. Drummond that his computer was working correctly and did not have any problems.

***v. Mr. Drummond Receives The First Negative Rating Of His Hartford Career.***

97. In early March 2015, Mr. Drummond was rated a "2" for his overall performance during 2014.

98. The "2" rating is generally regarded as a negative rating.

99. The "2" rating does not allow the employee so rated to receive a bonus or raise.

100. The March 2015 rating constituted the first time Mr. Drummond had ever received a negative review at The Hartford.

101. The rating was not based on the quality of Mr. Drummond's work, which was rated as good.

102. The rating was not based on Mr. Drummond's Customer Loyalty Index (CLI), which was rated as good.

103. The poor rating was purportedly based in part on Mr. Drummond's asking questions regarding how he and other ASRs were measured regarding the amount of work that they were supposed to do each day.

104. The poor rating was purportedly based in part on a finding that Mr. Drummond did not produce as much work as his peers for 2014.

105. The poor rating was purportedly based in part on Mr. Drummond's having engaged in "unacceptable" business etiquette including sending "inappropriate" e-mails and making "inappropriate" comments.

106. The e-mails and comments alluded to were about Mr. Drummond's having questioned The Hartford's practices and standards regarding production targets and how to get work done.

107. The poor rating was purportedly based in part on Mr. Drummond's having complained about issues pertaining to compulsory off-the-clock work, created by the Company requiring him to do a high volume of work in a forty-hour work week without approved overtime.

***vi. Mr. Drummond Receives A Verbal Warning.***

108. On March 18, 2015, Mr. Drummond received a verbal warning from Mr. Panitzke.

109. The verbal warning was purportedly based on Mr. Drummond's not having produced as much work as his peers.

110. The verbal warning constitutes notice to Mr. Drummond that he will be fired in 60 days if he does not make improvements in his performance.

111. The March 18, 2015 verbal warning was the first time Mr. Panitzke told Mr. Drummond how much work he was expected to produce.

112. The March 18, 2015 verbal warning was the first time Mr. Panitzke told Mr. Drummond how much work his peers were producing.

113. The March 18, 2015 verbal warning was purportedly based on Mr. Drummond's having raised issues with the Mitchell System.

114. The March 18, 2015 verbal warning was purportedly based on Mr. Drummond's having sent an e-mail to a Hartford director questioning the performance metrics.

115. The March 18, 2015 verbal warning was purportedly based on Mr. Drummond's having "pushed back inappropriately."

116. "Pushed back inappropriately" is Hartford-speak for its intention to punish Mr. Drummond's having complained about having to work off the clock.

117. The conduct of Defendants is intended to punish Mr. Drummond and retaliate against Mr. Drummond for having engaged in making internal and external complaints regarding The Hartford's FLSA violations.

118. The conduct of the Defendants, including but not limited to the March 2015 negative rating and March 2015 verbal warning, constitutes retaliation against Mr. Drummond for having made internal and external complaints about The Hartford's FLSA violations, and for having filed the First Drummond Case

**FIRST CLAIM FOR RELIEF**
**(Claim For Retaliation In Violation of the FLSA, 29 U.S.C. § 215(a)(3))**

119. Plaintiffs repeat and re-allege all preceding paragraphs of the Complaint inclusive, as if fully set forth herein.

120. The above-described conduct of the Defendants as set forth herein constituted discrimination and retaliation against Mr. Drummond for having made internal complaints, for having filed the First Drummond Case, and for assisting other members of the putative collective in taking actions to assert their rights thereunder.

121. The Hartford has given Mr. Drummond a negative annual review and a verbal warning in retaliation for his having made internal and external complaints regarding The Hartford's FLSA violations.

122. The Hartford has deprived Mr. Drummond of a bonus and a raise in retaliation for his having made internal and external complaints regarding The Hartford's FLSA violations.

123. By counsel, Defendants have warned Mr. Drummond not to speak to other employees regarding the First Drummond Case.

124. Mr. Drummond has a legally-protected right to discuss the First Drummond Case with other Hartford employees.

125. By counsel, Defendants are warning Mr. Drummond that they will fire him if he talks about the First Drummond Case to other Hartford employees.

126. By counsel, Defendants are communicating their threat of continuing to retaliate against Mr. Drummond if he talks about the First Drummond Case to other Hartford employees.

127. As the result of The Hartford's discrimination and retaliation, Mr. Drummond has suffered a loss of salary and benefits and damage to his reputation and earning potential.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court grant him all available relief, including without limitation compensatory damages, liquidated damages, attorneys' fees, punitive damages, continuation or restoration of employment as appropriate, and such other and further relief as this Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands trial by jury on all questions of fact raised by the complaint.

Dated: April 28, 2015

**THE SOROKIN LAW FIRM**

By: /s/ Matthew C. Sorokin
Matthew C. Sorokin
mat@sorokinlaw.com
9 Lewis Street
Hartford, CT 06103
860-776-6017

-And-

Jason T. Brown (will seek *Pro Hac Vice* Admission)
**JTB LAW GROUP, LLC**
jtb@jtblawgroup.com
155 2nd Street, Suite 4
Jersey City, NJ 07302
(201) 630-0000 (office)
(855) 582-5297 (fax)

*Attorneys for Plaintiff*